# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

ADAM ANTHONY BARRETT

    Petitioner,

v.                                               Case No. 5:18-cv-639-Oc-02PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## **ORDER**

On December 17, 2018, Petitioner Adam Barrett filed a petition and a supplementary memorandum under 28 U.S.C. § 2554 for a writ of habeas corpus by a person in state custody. Dkts. 1 & 2. Petitioner seeks relief from a May 13, 2016, Florida state court conviction. Dkt. 1 at 1. Respondents filed a response in opposition. Dkt. 12. With the benefit of full briefing, the Court finds that a hearing is unnecessary and denies the instant petition.

### **Background**

On the night of November 14, 2014, Petitioner and Victim went to Victim's apartment after work. Dkt. 12-2 at 174. There, Petitioner and Victim engaged in recreational drug use with two of Victim's neighbors. *Id.* What happened next is a matter of dispute.

According to Petitioner, Victim's neighbors left at around 11:00 p.m., only fifteen minutes after dropping off cocaine. Dkt. 2 at 7; Dkt. 12-2 at 20, 179. Petitioner claims that he and Victim then engaged in additional drug use and consensual oral sex before Petitioner left around 12:30 a.m. Dkt. 12-2 at 21–22, 179. Petitioner further alleges that he and Victim had intimate relations prior to the night of November 14, 2014, including vaginal sex on November 13, 2014. *Id.* at 28, 180.

Victim denies any form of consensual intimate relations with Petitioner. Dkt. 12 at 1–2. According to Victim, the neighbors stayed until around 2:00–3:00 a.m., at which time Victim told Petitioner that he could sleep on the couch due to his intoxication. *Id.* at 2. Victim then went to her room alone and fell asleep. *Id.* Victim claims that she awoke at approximately sunrise to Petitioner on top of her vaginally penetrating her. *Id.* Victim began yelling at Petitioner to stop and get out. *Id.* Petitioner subsequently grabbed his clothes and left. *Id.*

Sometime between 8:00–9:00 a.m., November 15, 2014, Victim called her friend who immediately came over. *Id.* 2–3. Victim told her friend what happened and that she did not want to call the police. *Id.* at 3. Victim's friend then called the police for Victim. *Id.* Petitioner was charged with sexual battery upon a physically helpless person after a brief investigation. Dkt. 12-1 at 4.

On May 13, 2016 Petitioner was convicted of sexual battery upon a physically helpless person at a jury trial in the Fifth Judicial Circuit (Citrus County). On July

16, 2016 Petitioner was sentenced to fifteen years imprisonment with two years of community control. Dkt. 1 at 1. Petitioner directly appealed his conviction. *Id.* at 2. The state appellate court affirmed Plaintiff's conviction and sentence *per curiam* on March 14, 2017. *Barrett v. State*, 224 So. 3d 240, 240 (Fla. 5th DCA 2017). The mandate was issued April 7, 2017. Dkt. 12-2 at 207.

On February 12, 2018, Petitioner filed a Rule 3.850 motion for post-conviction relief. Dkt. 12-2 at 209. Petitioner raised four claims of ineffective assistance of trial counsel in his motion: 1) failure to investigate all DNA donors, 2) failure to call a toxicology expert, 3) failure to object to improper closing arguments, and 4) failure to test exculpatory DNA evidence. *Id.* at 210–14. On March 1, 2018, the trial court summarily denied Petitioner's motion on all four grounds. *Id.* at 230–36. On November 6, 2018, the state appellate court affirmed the trial court's denial of Petitioner's motion *per curiam*. Dkt. 12-3 at 15. Petitioner was not granted a rehearing. *Id.* at 23.

On December 17, 2018, Petitioner filed the instant petition claiming ineffective assistance of counsel for a failure to 1) investigate all DNA donors, 2) call a toxicology expert, 3) object to improper closing arguments, and 4) test all DNA evidence in a DNA evidence-based case. Dkt. 2 at 4–11. On April 2, 2019, a response was ordered which Respondents then filed on July 1, 2019. Dkts. 10 & 12.

3

## Standards of Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction:

> on a claim "that was adjudicated on the merits in the State court proceedings" unless the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

Moreover, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002). Only if this Court determines that the state court's adjudication of Petitioner's claim was unreasonable under § 2254(d), must a *de novo* review of the record be undertaken. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009).

## Discussion

A. <u>Timeliness and Exhaustion</u>

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1). Time begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review." *Id.* § 2244(d)(1)(A). The clock stops running for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" *Id.* § 2244(d)(2). There is no dispute that this petition is timely. Dkt. 12 at 10–11.

The Petition is also exhausted for federal habeas purposes. Petitioner raised all four grounds for relief presented here during state post-conviction review and his subsequent appeal. Dkt. 12 at 11.

B. Merits

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254[.]" *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Here, Petitioner presents four grounds for federal habeas corpus relief which are all based on alleged ineffective assistance of counsel. Dkt. 2 at 4–11. Respondents argue that each of Petitioner's claims are meritless. Dkt. 12 at 15–28. This Court agrees and denies the petition on all grounds.

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner claiming ineffective assistance of counsel carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish deficient assistance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Notwithstanding the highly deferential standard posed by *Strickland*, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. In the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision

7

denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding . . . . [I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

1. Failure to Investigate All DNA Donors

In Ground One, Petitioner alleges his trial counsel provided ineffective assistance of counsel because they failed to investigate all DNA donors. Dkt. 1 at 5. The state court found this claim to be both factually suspect and legally meritless. Dkt. 12-2 at 232–33. This Court agrees.

Petitioner's DNA was obtained via vaginal and cervical swabs of the Victim. Dkt. 12-2 at 225. Contrary to Petitioner's claims, the state post-conviction found there were only two DNA donors in the DNA report—Petitioner and Victim—and that both were investigated by Petitioner's counsel. Dkt. 12-1 at 155–60; Dkt. 12-2

8

at 225, 232–33. The DNA report indicates "the presence of a mixture" and "[a]ssuming two donors to the mixture, a complete DNA profile foreign to [the victim]" and "matches the DNA profile from [Petitioner.]" Dkt. 12-2 at 225. Petitioner misinterprets or mischaracterizes to mean that "there was another DNA donor other than the alleged victim and defendant[.]" Dkt. 2 at 4. The DNA expert's testimony, however, makes clear that there was one male and one female donor identified by the DNA report and that the male DNA matched Petitioner's DNA with virtual certainty. Dkt. 12-1 at 155–60. Despite Petitioner's attempt to distort the DNA expert's testimony to support his narrative, the record conclusively refutes Petitioner's position and supports that of the state court. Dkt. 2 at 4–5; Dkt. 12-1 at 155–60; Dkt. 12-2 at 225. Petitioner is unable to rebut this finding.

Further, even if Petitioner's version of the evidence was a reasonable interpretation and there was a third source of DNA the post-conviction court found it would not be admissible under Florida law. Dkt. 12-2 at 233. Under Florida Statute § 794.022(2) DNA evidence from "prior consensual sexual activity between the victim and any person other than the offender may not be admitted" except to prove either that "the defendant was not the source of the semen" or when consent of the victim is at issue "to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent." Neither of these exceptions was relevant in

9

Petitioner's case. Therefore, the additional DNA evidence would have been inadmissible under Florida's Rape Shield Law even if it did exist. *See* Fla. Stat. § 794.022(2); Dkt. 12-2 at 233. Consequently, a failure to test additional DNA evidence by trial counsel would not amount to deficient assistance.

In order to secure relief under 28 U.S.C. § 2254(d)(2), Petitioner must demonstrate that the denial of his claim resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Nejad*, 830 F.3d at 1288. Petitioner cannot overcome this burden. The post-conviction court's factual findings are supported by the record and Petitioner presents no evidence to the contrary. Therefore, Petitioner is not entitled to relief for Ground One.

2. Failure to Call a Toxicology Expert

In Ground Two, Petitioner alleges that his trial counsel was ineffective for failing to call a toxicology expert. Dkt. 1 at 7. According the Petitioner if a toxicology expert had testified about the Victim's cocaine use then the Victim's testimony about being a heavy sleeper would have been impeached, and the outcome would have been different. Dkt. 2 at 6–7.

In denying Petitioner's claim the post-conviction held:

> The Defendant's second claim is that his trial counsel was ineffective for failing to call a toxicology expert. Here, the Defendant argues that his trial counsel should have called an expert to testify that the cocaine found in the victim's system would have negated and impeached the

10

> victim's testimony that she was a "heavy sleeper." The Defendant argues that such testimony from a toxicology expert, coupled with testimony about another DNA donor, would have changed the jury's perception. The Defendant claims that such testimony might have raised questions, such as whether the victim was hallucinating or mistook the Defendant as her boyfriend.
>
>   This claim is also meritless. To begin, the DNA evidence shows that the Defendant's genetic material was found in the victim's vaginal [sic]; thus, when the victim woke up with the Defendant forcibly having sexual intercourse with her, she was not hallucinating with her boyfriend. Second, as stated above, testimony regarding other DNA donors is inadmissible. Third, the victim's actual testimony was that drinking alcohol and smoking marijuana makes her tired and she becomes a "heavy sleeper." Plus, it was roughly 3:00 o'clock in the morning and she is a "heavy sleeper" without such drugs. (See Trial Transcript, pg. 36-37, May 13, 2016). The testimony was adduced to show that the social gathering after work with friends was over and it was time for the guests to leave. In other words, she was tired and needed to sleep. Finally, the Defendant is merely speculating that a toxicology expert might testify that cocaine made her a "heavy sleeper" and/or a hallucinator. Thus, the Defendant failed to show how his trial counsel's failure to call a toxicology expert could undermine the confidence i[n] the proceeding.

Dkt. 12-2 at 233-34. This is neither contrary to clearly established law nor an unreasonable determination of the facts in light of evidence. *See Nejad*, 830 F.3d at 1288.

Petitioner argues the post-conviction court misunderstood his argument because it discussed the toxicology expert testimony being about cocaine making her a "heavy sleeper" while Petitioner's argument was that the toxicology expert would testify to discredit that claim. Dkt. 2 at 6; Dkt. 12-2 at 234. But the issue heavy or light sleeper has no impact on the validity of the post-conviction court's decision

11

regarding Petitioner's speculation of what the expert might say. In the Eleventh Circuit mere speculation concerning expert toxicology testimony, like that presented here by Petitioner, is incapable of sustaining an ineffective assistance of counsel claim. *See Finch v. Sec'y, Dept. of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016) ("Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with his claims is mere speculation and does not entitle him to habeas relief."). Thus, whether Petitioner meant to speculate that expert testimony would have painted Victim as a "light sleeper" due to cocaine use instead of a "heavy sleeper" is immaterial. The issue is that Petitioner's speculation concerning any hypothetical testimony is unsupported. *See id.* Petitioner's argument fails to address this problem sufficiently. *Id.*; Dkt. 2 at 6–7.

Even if Petitioner could carry the burden of demonstrating deficient assistance here, the Court agrees with the post-conviction court that Petitioner cannot establish resulting prejudice. To establish resulting prejudice under *Strickland*, Petitioner must show that, but for trial counsel's failure to call a toxicology expert, there is a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner's hypothetical expert testimony does little to support Petitioner's defense or impeach Victim's testimony. First, Victim testified at trial that she had done cocaine that night along with smoking marijuana and drinking alcohol. Dkt. 12-1 at 41–42. So any issues regarding her state of mind or ability to

recall because of the drug use was already before the jury. Second Petitioner maintained at trial that they only had consensual oral sex and that the encounter Victim described never happened. Dkt. 12-2 at 42–43. Expert toxicology testimony could not explain why Petitioner's semen was found inside Victim. Dkt. 12-1 at 135, 155–60; Dkt. 12-2 at 225. Accordingly, because the hypothetical expert testimony would not aid Petitioner's defense, the probability that such expert testimony would have altered the proceedings is not "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It was therefore reasonable for the post-conviction court to deny Petitioner's second claim.

Petitioner cannot demonstrate that the denial of his claim regarding expert testimony "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Nejad*, 830 F.3d at 1289. Petitioner presents no clear and convincing evidence to rebut the presumption of correctness present here. Thus, Petitioner is not entitled relief for Ground Two.

3. Failure to Object to Improper Closing Arguments

In Ground Three, Petitioner alleges that his trial counsel was ineffective for failing to object to closing arguments. Dkt. 1 at 8. This claim is also without merit.

In denying Petitioner's claim, the post-conviction court held that:

> The Defendant's third claim is that his trial counsel was ineffective for failing to object to improper closing arguments. Here, the Defendant argues that his counsel should have objected to the State's closing arguments that the victim and her friend [ ] did not have time to corroborate their testimony prior to the trial because [Friend] moved away to Alaska after the incident. The Defendant speculates that the two friends probably did communicate before the trial. The Defendant asserts that the closing argument was prosecutorial misconduct that improperly influenced the jury's opinion and affected the outcome of the trial. However, this claim is refuted by the record. This part of the State's closing argument was not a discretionary fictious assumption by the prosecutor as argued by the Defendant, but rather, it was a summation of the friend's actual testimony. Therefore, the Defendant's third claim is without merit.

Dkt. 12-2 at 234 (internal citations omitted). The post-conviction court's findings are reasonable given the trial record. Dkt. 12-1 at 73–74. Victim's friend testified that she had not had much contact with anyone from Citrus County, Florida since moving to Alaska. *Id.* The state prosecutor was therefore relying on the record when arguing that Victim's friend and Victim had "[n]o opportunity to get [the testimony] right or to corroborate it or anything like that." Dkt. 12-2 at 76–77. Petitioner has not established that the comments were improper or that they "rendered the trial fundamentally unfair." *Crenshaw v. Sec'y, Fla. Dep't of Corr.,* No. 16-17735-D, 2017 WL 6761058, at *6 (11th Cir. 2017) (citing *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)).

Petitioner failed to rebut the presumption that the state court's factual determinations were correct with clear and convincing evidence. *See Nejad*, 830

F.3d at 1289. Petitioner presented no evidence that Victim and her friend were actually communicating prior to trial or that the prosecutor's statements were actually improper. As such, this Court cannot find that the state court's factual determinations were unreasonable. *See Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). Accordingly, Petitioner is not entitled to relief for Ground Three.

    4. <u>Failure to Recognize and Test All DNA Evidence in a DNA Centered Case</u>

Finally, in Ground Four Petitioner argues that his trial counsel was ineffective for failing to recognize and test all DNA evidence which could have exculpatory value. Dkt. 1 at 10. Petitioner claims that, if tested, hair found inside Victim's vagina would prove to be her alleged boyfriend's, thus demonstrating sexual intercourse between Victim and another party after the alleged sexual assault. Dkt. 2 at 10. According to Petitioner, this evidence would have shown "the fact that [Victim] was a promiscuous girl who had multiple sex partners in the same night thus projecting the reality to the jury of [Victim's] true nature." *Id*. Petitioner explains his counsel's failure to test this evidence demonstrates a conspiracy between the defense and prosecution. *Id*.

The post-conviction court denied Petitioner's final claim, holding:

> The Defendant's final claim is that his trial counsel was ineffective for failing to recognize and test exculpatory DNA evidence. This claim is similar to the Defendant's first claim, except in this claim he argues that a clump of pubic hair found inside the victim's vagina that was not tested was inculpatory evidence. The Defendant argues that testing this clump of hair may have shown that it belonged to the victim's boyfriend

15

and would mean the victim had sex with her boyfriend after the alleged assault or that she was mistaken or lied and would have exonerated the Defendant. Also, the Defendant alleges a conspiracy between his trial counsel and the State not to have the clump of hair tested. However, this Court fails to see how this clump of hair could be exculpatory. As in the first claim, evidence of DNA donors from consensual encounters is inadmissible pursuant to section 794.022, Florida Statutes. The Defendant does not allege any facts that may qualify this clump of hair for admissibility under the rape shield law. Testing this clump of hair could not show that the defendant was not the source of his own semen found on the victim's swabs. Further, consent to sexual intercourse was not the Defendant's defense because he testified that they only had oral sex; thus, the exceptions of 794.022(2) did not apply. In sum, the Defendant's claim that this clump of hair would have exonerated him and his counsel was therefore ineffective for failing to have it tested, is without merit as a matter of law.

Dkt. 12-2 at 234–35 (internal citations omitted). Petitioner cannot demonstrate that the state court's denial was contrary to clearly established law or an unreasonable determination of the facts in light of evidence. *See Nejad*, 830 F.3d at 1288.

As noted above, there are two exceptions to the prohibition that Florida's Rape Shield Law places on DNA evidence from consensual encounters. Fla. Stat. § 794.022(2). Said evidence may be admitted: 1) when it may prove that the defendant was not the source of the semen, pregnancy, injury, or disease, or 2) when it is relevant to consent when the evidence establishes "a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent." *Id.* As discussed in Ground One, Petitioner's DNA is a certain match to the DNA taken from Victim's vagina, flatly contradicting Petitioner's defense that he and Victim had no vaginal sex that night.

Dkt. 12-1 at 135, 155–60; Dkt. 12-2 at 22. The post-conviction court determined that even if the evidence was what Petitioner claimed, it would be inadmissible under Florida's Rape Shield Law. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Thus, Petitioner is not entitled to relief for Ground Four.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## Conclusion

The Court denies Barrett's Petition with prejudice. Dkt. 1. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on August 11, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se